1  KAREN P. HEWITT
   United States Attorney
2  PETER J. MAZZA
   Assistant U.S. Attorney
3  California State Bar No. 239918
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-5528 / (619) 235-2757 (Fax)
   Email: peter.mazza@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10
   UNITED STATES OF AMERICA,        )   Case No. 08CR2029-WQH
11                                  )
            Plaintiff,              )   Date: August 4, 2008
12                                  )   Time: 2:00 p.m.
            v.                      )
13                                  )   GOVERNMENT'S RESPONSE AND
   MELKIADES LOPEZ-SALVATIERRA,     )   OPPOSITION TO DEFENDANT'S
14                                  )   MOTION TO:
            Defendant.             )
15                                  )   (1)   COMPEL DISCOVERY;
                                    )   (2)   SUPPRESS STATEMENTS; AND
16                                  )   (3)   LEAVE TO FILE FURTHER
                                    )         MOTIONS
17                                  )
                                    )   TOGETHER WITH MEMORANDUM OF
18                                  )   POINTS AND AUTHORITIES.
   _____  )
19
        COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and
20
   through its counsel Karen P. Hewitt, United States Attorney, and
21
   Peter J. Mazza, Assistant U.S. Attorney, and hereby files its
22
   Response and Opposition to the motions filed on behalf of the
23
   above-captioned defendant.  This Response and Opposition is based
24
   upon the files and records of this case.
25
   //
26
   //
27
28                                                      08CR2029-WQH

## I

## **INDICTMENT**

On June 17, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Melkiades Lopez-Salvatierra ("Defendant") with Deported Alien Found in the United States, in violation of Title 8, United States Code, Section 1326.  The Indictment further alleged that Defendant had been removed from the United States subsequent to November 18, 2005.

## II

## **STATEMENT OF FACTS**

### A.  **THE INSTANT OFFENSE**

On April 12, 2008, United States Border Patrol ("USBP") Agent Thomas Watson was conducting line watch duties approximately five miles east of the Tecate, California port of entry and approximately one mile north of the United States/Mexico international boundary. This area is frequented by illegal aliens attempting to further their illegal entry into the United States.

At approximately 10:00 p.m., Agent Watson responded to a seismic intrusion device in this general vicinity.  Once there, he discovered 21 individuals in the area of the device.  Agent Watson identified himself as a USBP agent, and inquired with each individual about their immigration status.  Defendant, and the other 20 individuals, freely admitted that he was a Mexican citizen and native who was present in the United States without any lawful authority.  The 21 individuals were arrested and transported to the Tecate, California Border Patrol station.

//

08CR2029-WQH

Agents at the station discovered that Defendant was on active parole for February 27, 2007 convictions for possession of burglary tools and providing false identification to a peace officer.  On April 15, 2008, Defendant was booked into county jail for his parole violation.

On May 19, 2008, Defendant was returned to the custody of Immigration and Customs Enforcement ("ICE").

**B.    DEFENDANT'S IMMIGRATION HISTORY**

Defendant is a citizen of Mexico who was physically removed from the United States through the San Ysidro, California Port of Entry to Mexico on April 10, 2008.  Prior to his April 2008 deportation, Defendant had been deported on November 15, 2007, July 13, 2006, April 18, 2005, March 25, 2005, November 7, 2003 and July 12, 2003.

**C.    DEFENDANT'S CRIMINAL HISTORY**

Defendant has five prior convictions: (1) February 27, 2007 possession of burglary tools and false identification to a peace officer; (2) September 18, 2006 disorderly conduct: prostitution; (3) November 18, 2005 vehicle theft; (4) December 16, 2004 vehicle theft; and (5) June 15, 2004 grand theft.

**III**

**POINTS AND AUTHORITIES**

**A.    DEFENDANT'S MOTION FOR DISCOVERY SHOULD BE DENIED EXCEPT AS PROVIDED BELOW**

The Government has and will continue to fully comply with its discovery obligations.  To date, the Government has complied with its discovery obligations and will continue to do in accordance with Rule 16, Jencks, and the relevant case law.

*08CR2029-WQH*

3

**1.    Items Which The Government Has Already
Provided Or Will Voluntarily Provide**

a.    The Government will disclose to Defendant and make available for inspection, copying or photographing:  any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent.  The Government will also to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

b.    The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant;[1]

---

[1]/    Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their

08CR2029-WQH

4

1          c.    The Government will permit Defendant to inspect

2    and copy or photograph any results or reports of physical or mental

3    examinations, and of scientific tests or experiments, or copies

4    thereof, which are in the possession, custody or control of the

5    Government, the existence of which is known, or by the exercise of

6    due diligence may become known, to the attorney for the Government,

7    and which are material to the preparation of his defense or are

8    intended for use by the Government as evidence during its case-in-

9    chief at trial;[2]

10          d.    The Government has furnished to Defendant a

11   copy of his prior criminal record, which is within its possession,

12   custody or control, the existence of which is known, or by the

13   exercise of due diligence may become known to the attorney for the

14   Government;

15          e.    The Government will disclose the terms of all

16   agreements (or any other inducements) with cooperating witnesses,

17

18   defense against the Government's case-in-chief.  United States

19   v. Armstrong, 116 S. Ct. 1480 (1996).  Further, Rule 16 does not

20   require the disclosure by the prosecution of evidence it intends

21

22   to use in rebuttal.  United States v. Givens, 767 F.2d 574 (9th

23   Cir. 1984), cert. denied, 474 U.S. 953 (1985).

24       2/   The Government does not have "to disclose every single

25   piece of paper that is generated internally in conjunction with

26   scientific tests."  United States v. Iglesias, 881 F.2d 1519

27   (9th Cir. 1989), cert. denied, 493 U.S. 1088 (1990).

28                                                  08CR2029-WQH

5

1  if any are entered into;

2         f.   The Government may disclose the statements of

3  witnesses to be called in its case-in-chief when its trial

4  memorandum is filed;[3]

5

6  ─────────────────

7         3/   Production of these statements is governed by the

8  Jencks Act and need occur only after the witness testifies on

9  direct examination.  United States v. Mills, 641 F.2d 785, 789-

10 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981); United States

11 v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978), cert. denied,

12 440 U.S. 921 (1979); United States v. Walk, 533 F.2d 417, 418-

13 419 (9th Cir. 1975).  For Jencks Act purposes, the Government

14 has no obligation to provide the defense with statements in the

15 possession of a state agency.  United States v. Durham, 941 F.2d

16 858 (9th Cir. 1991).  Prior trial testimony does not fall within

17 the scope of the Jencks Act.  United States v. Isigro, 974 F.2d

18 1091, 1095 (9th Cir. 1992).  Further, an agent's recorded radio

19 transmissions made during surveillance are not discoverable

20 under the Jencks Act.  United States v. Bobadilla-Lopez, 954

21 F.2d 519 (9th Cir. 1992).  The Government will provide the grand

22 jury transcripts of witnesses who have testified before the

23 grand jury if said testimony relates to the subject matter of

24 their trial testimony.  Finally, the Government reserves the

25 right to withhold the statement of any particular witness it

26

27

28                                                08CR2029-WQH

1    g.    The Government will disclose any record of

2  prior criminal convictions that could be used to impeach a

3  Government witness prior to any such witness' testimony;

4    h.    The Government will disclose in advance of

5  trial the general nature of other crimes, wrongs, or acts of

6  Defendant that it intends to introduce at trial pursuant to Rule

7  404(b) of the Federal Rules of Evidence;

8    i.    The Government acknowledges and recognizes its

9  continuing obligation to disclose exculpatory evidence and

10  discovery as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),

11  <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Jencks and Rules 12

12  and 16 of the Federal Rules of Criminal Procedure, and will abide

13  by their dictates.[4]

14  //

15  _____

16    deems necessary until after the witness testifies.

17    [4]    <u>Brady v. Maryland</u> requires the Government to produce all

18  evidence that is material to either guilt or punishment.  <u>Brady v.</u>

19  <u>Maryland</u>, 373 U.S. 83 (1963).  The Government's failure to provide

20  the information required by <u>Brady</u> is constitutional error only if

21  the information is material, that is, only if there is a reasonable

22  probability that the result of the proceeding would have been

23  different had the information been disclosed.  <u>Kyles v. Whitley</u>,

24  115 S. Ct. 1555 (1995).  However, neither <u>Brady</u> nor Rule 16 require

25  the Government to disclose inculpatory information to the defense.

26  <u>United States v. Arias-Villanueva</u>, 998 F.2d 1491 (9th Cir. 1993).

27

28                                                      08CR2029-WQH

7

1  //

2  **2.   Items Which Go Beyond The Strictures Of Rule 16**

3        **a.   The Requests By The Defendants For Specific**
          **Brady Information Or General Rule 16**
4         **Discovery Should Be Denied**

5        Defendant requests that the Government disclose all evidence

6  favorable to him, which tends to exculpate him, or which may be

7  relevant to any possible defense or contention they might assert.

8        It is well-settled that prior to trial, the Government must

9  provide a defendant in a criminal case with evidence that is both

10  favorable to the accused and material to guilt or punishment.

11  Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v.

12  Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87

13  (1963).   As the Court explained in United States v. Agurs, 427

14  U.S. 97, 104 (1976), "a fair analysis of the holding in Brady

15  indicates that implicit in the requirement of materiality is a

16  concern that the suppressed evidence may have affected the outcome

17  of the trial."  Thus, under Brady, "evidence is material only if

18  there is a reasonable probability that, had the evidence been

19  disclosed to the defense, the result of the proceeding would have

20  been different."  United States v. Bagley, 473 U.S. 667, 682 (1985)

21  (emphasis added).  A "reasonable probability" is a probability

22  sufficient to undermine confidence in the outcome.  Pennsylvania v.

23  Richie, 480 U.S. at 57 (quoting United States v. Bagley, 473 U.S.

24  at 682).

25        The Supreme Court has repeatedly held that the Brady rule is

26  not a rule of discovery; rather, it is a rule of fairness and is

27  based upon the requirement of due process.  United States v.

28                                            08CR2029-WQH

                                8

1   <u>Bagley</u>, 473 U.S. at 675, n. 6; <u>Weatherford v. Bursey</u>, 429 U.S. at

2   559; <u>United States v. Agurs</u>, 427 U.S. at 108.   The Supreme Court's

3   analysis of the limited scope and purpose of the <u>Brady</u> rule, as set

4   forth in the <u>Bagley</u> opinion, is worth quoting at length:

5           Its purpose is not to displace the adversary system as the
            primary means by which truth is uncovered, but to ensure that
6           a miscarriage of justice does not occur. [footnote omitted].
            Thus, the prosecutor is not required to deliver his entire
7           file to defense counsel,[5] but only to disclose evidence
            favorable to the accused that, if suppressed, would deprive
8           the defendant of a fair trial:  "For unless the omission
            deprived the defendant of a fair trial, there was no
9           constitutional violation requiring that the verdict be set
            aside; and **absent a constitutional violation, there was no**
10          **breach of the prosecutor's constitutional duty to disclose . .**
            **. but to reiterate a critical point, the prosecutor will not**
11          **have violated his constitutional duty of disclosure unless his**
            **omission is of sufficient significance to result in the denial**
12          **of the defendant's right to a fair trial."**

13  <u>United States v. Bagley</u>, 473 U.S. at 675 (quoting <u>United States v.</u>

14  <u>Agurs</u>, 427 U.S. at 108) (emphasis added); <u>see also</u> <u>Pennsylvania v.</u>

15  ────────────────────

16          [5]    <u>See</u> <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976);

17  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972).  <u>See also</u> <u>California</u>

18  <u>v. Trombetta</u>, 467 U.S. 479, 488, n. 8 (1984).   An interpretation of

19  <u>Brady</u> to create a broad, constitutionally required right of

20  discovery "would entirely alter the character and balance of our

21  present system of criminal justice."  <u>Giles v. Maryland</u>, 386 U.S.

22  66, 117 (1967) (Harlan, J., dissenting).   Furthermore, a rule that

23  the prosecutor commits error by any failure to disclose evidence

24

25  favorable to the accused, no matter how insignificant, would impose

26  an impossible burden on the prosecutor and would undermine the

27  interest in the finality of judgements.

28                                                      08CR2029-WQH

1   <u>Richie</u>, 480 U.S. at 59 ("A defendant's right to discover

2   exculpatory evidence does not include the unsupervised authority to

3   search through the Commonwealth's files.").   Accordingly, the

4   Government in this case will comply with the <u>Brady</u> mandate but

5   rejects any affirmative duty to create or seek out evidence for the

6   defense.

7               **b.   Defendants' Motion For Disclosure Of Witness**
                **Information Should Be Denied Except As Is**
8               **Agreed To By The Government**

9       Defendant seeks numerous records and information pertaining to

10  potential Government witnesses.   Regarding these individuals, the

11  Government will provide Defendant with the following items prior to

12  any such individual's trial testimony:

13              (1)   The terms of all agreements (or any other

14  inducements) it has made with cooperating witnesses, if they are

15  entered into;

16              (2)   All relevant exculpatory evidence

17  concerning the credibility or bias of Government witnesses as

18  mandated by law; and,

19              (3)   Any record of prior criminal convictions

20  that could be used to impeach a Government witness.

21      The Government opposes disclosure of rap sheet information of

22  any Government witness prior to trial because of the prohibition

23  contained in the Jencks Act.   <u>See</u> <u>United States v. Taylor</u>, 542 F.2d

24  1023, 1026 (8th Cir. 1976), <u>cert. denied</u>, 429 U.S. 1074 (1977).

25  Furthermore, any uncharged prior misconduct attributable to

26  Government witnesses, all promises made to and consideration given

27  to witnesses by the Government, and all threats of prosecution made

28                                                      08CR2029-WQH

1  to witnesses by the Government will be disclosed if required by the

2  doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v.</u>

3  <u>United States</u>, 450 U.S. 150 (1972).

### c.    The Rough Notes Of Our Agents

5       Although the Government has no objection to the preservation

6  of agents' handwritten notes, we object to their production at this

7  time.  Further, the Government objects to any pretrial hearing

8  concerning the production of rough notes.  If during any

9  evidentiary proceeding, certain rough notes become relevant, these

10  notes will be made available.

11       Prior production of these notes is not necessary because they

12  are not "statements" within the meaning of the Jencks Act unless

13  they comprise both a substantially verbatim narrative of a witness'

14  assertions <u>and</u> they have been approved or adopted by the witness.

15  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980); <u>see</u>

16  <u>also</u> <u>United States v. Kaiser</u>, 660 F.2d 724, 731-32 (9th Cir. 1981);

17  <u>United States v. Griffin</u>, 659 F.2d 932, 936-38 (9th Cir. 1981).

### d.    Government Reports, Summaries, And Memoranda

19       Rule 16, in pertinent part, provides:

20       [T]his rule does not authorize the discovery or
         inspection of reports, memoranda, or other internal

21       government documents made by the attorney for the
         government or <u>other government agent in connection with</u>

22       <u>the investigating or prosecuting of the case</u>.

23  Rule 16(a)(2); <u>see also</u> <u>United States v. Sklaroff</u>, 323 F. Supp.

24  296, 309 (S.D. Fla. 1971), and cases cited therein (emphasis

25  added); <u>United States v. Garrison</u>, 348 F. Supp. 1112, 1127-28 (E.D.

26  La. 1972).

27       The Government, as expressed previously, recognizes and

28                                                          08CR2029-WQH

11

embraces its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 450 U.S. 150 (1972), Rule 16, and the Jencks Act.[6]  We shall not, however, turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[7]  Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

        **e.   Defendants Are Not Entitled To Addresses**
            **<u>And Phone Numbers Of Government Witnesses</u>**

    Defendant requests the name and last known address and phone of each prospective Government witness.  While the Government <u>may</u> supply a tentative witness list with its trial memorandum, it objects to providing home addresses and telephone numbers.  <u>See</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685, 688 (9th Cir. 1980), and <u>United States v. Conder</u>, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual

---

    <u>6</u>/   Summaries of witness interviews conducted by Government agents (DEA 6, FBI 302) are not Jencks Act statements.  <u>United States v. Claiborne</u>, 765 F.2d 784, 801 (9th Cir. 1985).  The production of witness interview is addressed in more detail below.

    <u>7</u>/   The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

08CR2029-WQH

Government witnesses).  A request for the home addresses and telephone numbers of Government witnesses is tantamount to a request for a witness list and, in a non-capital case, there is no legal requirement that the Government supply defendant with a list of the witnesses it expects to call at trial.  United States v. Thompson, 493 F.2d 305, 309 (9th Cir.), cert. denied, 419 U.S. 835 (1974); United States v. Glass, 421 F.2d 832, 833 (9th Cir. 1969).[8]

The Ninth Circuit addressed this issue in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), cert. denied, 445 U.S. 966 (1980).  In Jones, the court made it clear that, absent a showing of necessity by the defense, there should be no pretrial disclosure of the identity of Government witnesses.  Id. at 455.  Several

---

[8]   Even in a capital case, the defendant is only entitled to receive a list of witnesses three days prior to commencement of trial.  18 U.S.C. § 3432.  See also United States v. Richter, 488 F.2d 170 (9th Cir. 1973)(holding that defendant must make an affirmative showing as to need and reasonableness of such discovery).  Likewise, agreements with witnesses need not be turned over prior to the testimony of the witness, United States v. Rinn, 586 F.2d 1113 (9th Cir. 1978), and there is no obligation to turn over the criminal records of all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Egger, 509 F.2d 745 (9th Cir.), cert. denied, 423 U.S. 842 (1975); United States v. Cosby, 500 F.2d 405 (9th Cir. 1974).

08CR2029-WQH

1  other Ninth Circuit cases have reached the same conclusion.  <u>See,</u>

2  <u>e.g.</u>, <u>United States v. Armstrong</u>, 621 F.2d 951, 1954 (9th Cir.

3  1980); <u>United States v. Sukumolachan</u>, 610 F.2d at 687; <u>United</u>

4  <u>States v. Paseur</u>, 501 F.2d 966, 972 (9th Cir. 1974) ("A defendant

5  is not entitled as a matter of right to the name and address of any

6  witness.").

7      **f. <u>Government's Case-In-Chief</u>**

8    Defendant is hereby notified that the Government intends to

9  use in its case-in-chief at trial all evidence which Defendant is

10  entitled to discover under Rule 16, subject to any relevant

11  limitations prescribed in Rule 16.

12      **g. Defendant's Motion For Disclosure Of**
       **Oral Statements Made To Non-Government**

13         **<u>Witnesses Should Be Denied</u>**

14    Defendants are not entitled to discovery of oral statements

15  made by them to persons who were not - at the time such statements

16  were made - known by the defendants to be Government agents.  The

17  plain language of Rule 16 supports this position.  Rule 16

18  unambiguously states that defendants are entitled to "written and

19  recorded" statements made by them.  The rule limits discovery of

20  oral statements to "that portion of any written record containing

21  the substance of any relevant oral statement made by the defendant

22  whether before or after arrest in response to interrogation by any

23  person then known to the defendant to be a Government agent," and

24  "the substance of any other relevant oral statement made by the

25  defendant whether before or after arrest in response to

26  interrogation by any person then known by the defendant to be a

27  Government agent if the Government intends to use that statement at

28                  08CR2029-WQH

1  trial."  The statutory language clearly means that oral statements

2  are discoverable only in very limited circumstances, and then, only

3  when made to a known Government agent.

4                  **h.    Personnel Files of Federal Agents**

5       Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir.

6  1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984),

7  the Government agrees to review the personnel files of its federal

8  law enforcement witnesses and to "disclose information favorable to

9  the defense that meets the appropriate standard of materiality . .

10  . ."  United States v. Cadet, 727 F.2d at 1467-68.  Further, if

11  counsel for the United States is uncertain about the materiality of

12  the information within its possession, the material will be

13  submitted to the court for in-camera inspection and review.  In

14  this case, the Government will ask the affected law enforcement

15  agency to conduct the reviews and report their findings to the

16  prosecutor assigned to the case.  In United States v. Jennings,

17  960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the

18  Assistant U.S. Attorney assigned to the prosecution of the case has

19  no duty to personally review the personnel files of federal law

20  enforcement witnesses.  In Jennings, the Ninth Circuit found that

21  the present Department of Justice procedures providing for a review

22  of federal law enforcement witness personnel files by the agency

23  maintaining them is sufficient compliance with Henthorn.  Jennings,

24  960 F.2d at 1492.  In this case, the Government will comply with

25  the procedures as set forth in Jennings.

26       Finally, the Government has no duty to examine the personnel

27  files of state and local officers because they are not within the

28                                                      08CR2029-WQH

1   possession, custody or control of the Federal Government.   <u>United</u>

2   <u>States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

3                     **i.   Reports Of Witness Interviews**

4        Defendant has requested the production of all reports

5   generated in connection with witness interviews.   To date, the

6   Government does not have any reports regarding witness interviews

7   or otherwise that have not been turned over to Defendant.   However,

8   to the extent that such additional reports regarding witness

9   interviews are generated, the information sought by Defendant is

10  not subject to discovery under the Jencks Act, 18 U.S.C., Section

11  3500.   In <u>Jencks v. United States</u>, 353 U.S. 657 (1957), the Supreme

12  Court held that a criminal defendant had a due process right to

13  inspect, for impeachment purposes, statements which had been made

14  to government agents by government witnesses.   Such statements were

15  to be turned over to the defense at the time of cross-examination

16  if their contents related to the subject matter of the witness'

17  direct testimony, and if a demand had been made for specific

18  statements of the witness.   <u>Id</u>. at 1013-15.   The Jencks Act, 18

19  U.S.C., Section 3500, was enacted in response to the Jencks

20  decision.   As the Supreme Court stated in an early interpretation

21  of the Jencks Act:

22          Not only was it strongly feared that disclosure of memoranda
            containing the investigative agent's interpretations and
23          impressions might reveal the inner workings of the
            investigative process and thereby injure the national
24          interest, but it was felt to be grossly unfair to allow the
            defense to use statements to impeach a witness which could not
25          fairly be said to be the witness' own rather than the product
            of the investigator's selections, interpretations, and
26          interpolations.   The committee reports of the Houses and the
            floor debates clearly manifest the intention to avoid these
27          dangers by restricting the production to those statements

28                                                      08CR2029-WQH

                                    16

1    defined in the bill.

2 <u>Palermo v. United States</u>, 360 U.S. 343, 350 (1959).  Having

3 examined the legislative history and intent behind enactment of the

4 Jencks Act, the Court concluded, "[t]he purpose of the Act, its

5 fair reading and its overwhelming legislative history compel us to

6 hold that statements of a government witness made to an agent of

7 the government which cannot be produced under the terms of 18

8 U.S.C. § 3500, cannot be produced at all."

9    Reports generated in connection with a witness's interview

10 session are only subject to production under the Jencks Act if the

11 witness signed the report, or otherwise adopted or approved the

12 contents of the report.  <u>See</u> 18 U.S.C. § 3500(e)(1); <u>see also</u>

13 <u>United States v. Miller</u>, 771 F.2d 1219, 1231-31 (9th Cir. 1985)

14 ("The Jencks Act is, by its terms, applicable only to writings

15 which are signed or adopted by a witness and to accounts which are

16 substantially verbatim recitals of a witnesses' oral statements.");

17 <u>United States v. Friedman</u>, 593 F.2d 109, 120 (9th Cir. 1979) (an

18 interview report that contains a summary of a witness' statements

19 is not subject to discovery under the Jencks Act); <u>United States v.</u>

20 <u>Augenblick</u>, 393 U.S. 248, 354-44 (1969) (rough notes of witness

21 interview not a "statement" covering entire interview). Indeed,

22 "both the history of the [Jencks Act] and the decisions

23 interpreting it have stressed that for production to be required,

24 the material should not only reflect the witness' own words, but

25 should also be in the nature of a complete recital that eliminates

26 the possibility of portions being selected out of context." <u>United</u>

27 <u>States v. Bobadilla-Lopez</u>, 954 F.2d 519, 522 (9th Cir. 1992).  As

28                                              08CR2029-WQH

17

1  recognized by the Supreme Court, "the [Jencks Act] was designed to

2  eliminate the danger of distortion and misrepresentation inherent

3  in a report which merely selects portions, albeit accurately, from

4  a lengthy oral recital." <u>Id</u>.  The defendants should not be allowed

5  access to reports which they cannot properly use to cross-examine

6  the Government's witnesses.

7                    **j.   <u>Expert Witnesses</u>**

8       The Government will disclose to Defendant the name,

9  qualifications, and a written summary of testimony of any expert

10  the Government intends to use during its case-in-chief at trial

11  pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the

12  scheduled trial date.

13                  **k.   <u>Other Discovery Requests</u>**

14       To the extent that the above does not answer all of

15  Defendant's discovery requests, the Government opposes the motions

16  on the grounds that there is no authority requiring us to provide

17  such material.

18  **B.   <u>DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED</u>**

19       Defendant moves this Court to suppress statements he made to

20  agents on the day of his arrest and to hold an evidentiary hearing to

21  determine if statements made by Defendant were the result of a

22  knowing, intelligent, and voluntary waiver of his <u>Miranda</u> rights.

23  Because statements Defendant made to Agent Watson in the area near the

24  United States/Mexico boundary fence were not the result of a custodial

25  interrogation, the motion should be denied as to those statements.

26       **1.   <u>Defendant's Pre-Arrest Statements Are Admissible</u>**

27       When a person has been deprived of his freedom of action in a

28                                                        08CR2029-WQH

                                   18

significant way, Government agents must administer <u>Miranda</u> warnings prior to questioning the person. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. <u>Id.</u> at 477-78. Defendant's initial statements to Watson are admissible because Defendant was not in custody.

Under these circumstances, Agent Watson acted reasonably in questioning Defendant as to his citizenship. An officer may question individuals reasonably detained near the border about their citizenship and immigration status, and he may ask them to explain suspicious circumstances. <u>See</u> <u>United States v. Cervantes-Flores</u>, 421 F.3d 825, 830 (9th Cir. 2005). Even where a defendant is handcuffed, this line of questioning does not constitute custodial interrogation. <u>Id.</u>

Here, Agent Watson approached a group of approximately 21 individuals in a remote area approximately five miles east and one mile north of Tecate, California port of entry at approximately 10:00 p.m. Agent Watson was responding to the activation of a seismic intrusion device that is intended to alert Border Patrol agents to the possible presence of illegal aliens in remote areas. Agent Watson conducted field immigration interviews with the 21 individuals once on scene. Under these circumstances, Agent Watson reasonably questioned the Defendant as to his citizenship and immigration status. This questioning was not custodial. <u>Miranda</u> does not apply and the statements are admissible.

**2.** **<u>Defendant Has Not Shown That an Evidentiary Hearing is Necessary</u>**

Defendant states that the Court "is required to determine,

08CR2029-WQH

19

outside the presence of the jury, whether any statements made by [LOPEZ-SALVATIERRA] are knowing and voluntary." (Def.'s Mot. 13.) To the extent that Defendant requests that an evidentiary hearing be held, the Court can and should deny Defendant's motion to suppress without a hearing.

There is no need for an evidentiary hearing in this matter. First, as discussed above, the agent acted reasonably and lawfully in conducting a field interview of Defendant as to his citizenship and immigration status. <u>Miranda</u> has no application to such a field interview.

Additionally, under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts as set forth in a declaration sufficient to require the granting of Defendant's motion. <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . the district court was not required to hold an evidentiary hearing"); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1.

Requiring a declaration from a defendant in no way compromises defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the government at trial over a defendant's objection. <u>Batiste</u>, 868 F.2d at 1092 (proper to require

08CR2029-WQH

declaration in support of Fourth Amendment motion to suppress); <u>Moran-Garcia</u>, 783 F. Supp. at 1271-74 (extending <u>Batiste</u> to Fifth Amendment motion to suppress).  Furthermore, a defendant can not reasonably claim that he has less information than the government, and therefore should be excused from providing proof to support a motion.  <u>Batiste</u>, 868 F.2d at 1092.  A defendant knows as well as anyone the facts that transpired at the time of his arrest and interrogation.

Here, Defendant has failed to support his allegations with a declaration, in clear violation of Local Rule 47.1(g).  Thus, Defendant fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing.  <u>See</u> <u>United States v. Howell</u>, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist").  As such, this Court should deny Defendant's motion to suppress and find that Defendant's field statements are admissible.

**C.    <u>LEAVE TO FILE ADDITIONAL MOTIONS</u>**

The Government does not oppose Defendant's request for leave to file further motions so long as they are based on newly discovered evidence.

//
//
//
//
//

08CR2029-WQH

21

1 | //

3 | **VI**
**CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed.

DATED: July 28, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Peter J. Mazza
PETER J. MAZZA
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: peter.mazza@usdoj.gov

08CR2029-WQH

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR2029-WQH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| MELKIADES LOPEZ-SALVATIERRA, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, PETER J. MAZZA, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Rosaline Feral

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008.

/s/ Peter J. Mazza
PETER J. MAZZA

08CR2029-WQH

23